UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTA LEWELLYN and TODD LEWELLYN
O/B/O J.L. AND L.L.,

    Plaintiffs,
v.                    Case No.:  8:07-cv-1712-T-33TGW

SARASOTA COUNTY SCHOOL BOARD,

    Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant Sarasota County School Board's Motion to Dismiss and/or Strike Plaintiffs' Third Amended Complaint (Doc. # 46), which was filed on September 11, 2008. On October 7, 2008, Plaintiffs filed a response in opposition to the motion. (Doc. # 52).

For the reasons that follow, this Court denies the motion to dismiss.

I. **Factual Background**

Plaintiffs are the parents of two disabled children, J.L. and L.L. (Doc. # 37 at ¶ 3).[1] Plaintiffs allege that Defendant, the Sarasota County School Board, failed to provide J.L. and L.L. with a free and appropriate public education ("FAPE") under the Individuals with Disabilities Education Act

---

[1] The factual allegations are taken from the third amended complaint (Doc. # 37) and are accepted as true for the purpose of deciding Defendant's motion to dismiss.

(the "IDEA"), 20 U.S.C. § 1400, *et seq.* Plaintiffs allege that J.L., a minor child, has "well documented" learning disabilities, which include:

> Attention Deficit Hyperactivity Disorder ("ADHD"); Cognitive deficits in *Visual Spacial Thinking, Auditory Processing, and Speed Processing*; Academic deficits in both *Written Expression* and *Math Calculation*; [a] Medical condition which causes a *Physical/Speech Impediment* due to an as yet un-resolved cleft pallet from birth; [and] . . . "*bullying*" and "*physical intimidation*" directed at J.L. on a regular basis.

(Doc. # 37 at ¶ 15)(emphasis in original).

Plaintiffs allege that minor child L.L. similarly suffers from ADHD, a cognitive deficit in "*Processing Speed*" and an academic deficit in "*Written Expression*" and "*Math Calculation*." (Id. at ¶ 18)(emphasis in original). Despite these specific learning disabilities and other obstacles, Plaintiffs allege that L.L. and J.L. are "otherwise qualified" to participate in all facets of education within the Sarasota County Public School District. (Id.)

Plaintiffs contend that Defendant moved L.L. and J.L. from Venice Area Middle School ("VAMS") to Laurel Nokomis Middle School ("LNMS") "in order that each of the children's respective documented specific learning disabilities would be addressed in accordance with their respective rights to a [FAPE]." (Id. at ¶ 20).

Plaintiffs identify eleven Sarasota County School Board employees and assert that Defendant is liable for their acts and omissions. For instance, Plaintiffs assert that LNMS teacher John Delp told L.L. that L.L. "needed to be more like the normal kids" and called L.L. "lazy." (Id. at ¶ 29). In addition, Plaintiffs contend that L.L.'s Individualized Educational Program ("IEP") was improperly changed within an IEP meeting, and as a result, L.L. was "subjected to multiple punishments and other incidences of public ridicule and humiliation arising out of his struggles resulting from his changed placement." (Id. at ¶ 30). Plaintiffs allege that Defendant, acting through its named agents, retaliated against L.L. due to the ongoing advocacy efforts of his parents, the Plaintiffs in this action. (Id.)

In addition, Plaintiffs allege that LNMS Principal Nancy Dublin "sought to have L.L. declared 'Emotionally Disturbed.'" (Id. at ¶ 31). Thereafter, Dublin unilaterally revoked L.L.'s ESE assignment to LNMS in an attempt to "force L.L. back to his districted school, VAMS, which had already been shown to be unable and ill-equipped to handle [L.L.]." (Id. at ¶ 31).

Plaintiffs assert that they requested that L.L. remain at LNMS (pursuant to the IDEA's "stay put" provision), and Plaintiffs also claim that they requested a Due Process

Hearing. (Id. at ¶¶ 33-34).[2] Ultimately, L.L. was moved to VAMS and the repeated requests for a Due Process hearing were denied by Defendant. (Id. ¶¶ at 33-38). Throughout the process, Plaintiffs assert that they "were stonewalled, lied to, and denied any relief." (Id. at ¶ 35). Plaintiffs also contend that "attorney John Bowen, on behalf of the District Superintendent, deliberately failed to disclose that he was an attorney acting on behalf of [Defendant] and attempted to force Mrs. Lewellyn into a meeting without the benefit of counsel or her advocate." (Id. at ¶ 36).

Plaintiffs allege that, within seven days of arriving at VAMS, J.L. was wrongfully threatened with expulsion from school because the teachers believed that J.L. was L.L. (Id. at ¶¶ 41-42). Plaintiffs pulled L.L. and J.L. from VAMS and "requested private school placement along with all IEP services at public expense." (Id. at ¶ 43). When that failed, Plaintiffs requested "homebound" education and IEP services "at public expense." (Id. at ¶ 47).

Thereafter, Defendant allegedly threatened Plaintiffs with criminal prosecution for "thwarting Florida's compulsory

---

[2] Plaintiffs indicate that "LNMS and the District advised the Lewellyns, their Advocate, and their Attorney . . . that there was 'no' Due Process and that 'no' hearings would be provided." (Doc. # 37 at ¶ 34).

attendance laws." (Id.). In May 2007, all settlement negotiations between the parties crumbled, and Plaintiffs renewed their request for a Due Process hearing under the terms of the IDEA. (Id. at ¶ 51). In August 2007, the Florida Department of Education's Department of Administrative Hearings dismissed both J.L. and L.L.'s cases as moot "because the school year during which some of the discrimination, retaliation, and IDEA violations had occurred, had ended." (Id. at ¶ 52).

Plaintiffs challenge the dismissal of L.L. and J.L.'s cases and allege that Defendant violated the IDEA, as well as other federal laws.

## II. Procedural History and the Third Amended Complaint

On September 21, 2007, Plaintiffs filed suit against Defendant. (Doc. # 1). Defendant filed various motions to dismiss this action, asserting, among other things, that Plaintiffs (then proceeding *pro se*) failed to set forth their allegations with sufficient detail to frame a response. The Court twice ordered Plaintiff to file an amended complaint (Doc. ## 16, 32). After obtaining counsel, Plaintiffs filed their third amended complaint (the operative complaint) on July 21, 2008. (Doc. # 37).

In count one, Plaintiffs request that this Court review the Due Process Hearing Request Dismissals under the IDEA. Among other things, Plaintiffs seek review of the orders dated August 22, 2007, finding that the requested IDEA relief was moot. (Doc. # 37 at ¶¶ 57-78). Plaintiffs request an order reversing the DOAH's dismissal of Plaintiffs' IDEA claims and "adjudicating [Plaintiffs'] IDEA claims" in Plaintiffs' favor. (Id. at ¶ 78).

In count two, Plaintiffs allege that Defendant violated the IDEA, *inter alia*, by failing to provide L.L. and J.L. with a FAPE. (Id. at ¶¶ 79-85). Plaintiffs request the following relief for Defendant's alleged violation of the IDEA: "re-evaluation at [Defendant's] sole expense of J.L. and L.L. by [Plaintiffs'] choice of qualified professional along with all compensatory education requirements arising from each such minor, disabled child's respective re-evaluation; and/or damages, as appropriate to remedy the losses suffered by [Plaintiffs]." Plaintiffs also request reimbursement of attorney's fees and litigation costs pursuant to 20 U.S.C. § 1415(i)(3)(B). (Id. at ¶ 85). Furthermore, Plaintiffs request that this Court "Support [Plaintiffs'] future requests for revocation of funding under IDEA based on the Court's final disposition of these cases." (Id.)

In count three, Plaintiffs contend that Defendant violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Among other allegations, Plaintiffs assert:

> J.L. and L.L. are individuals with a disability protected by the Rehabilitation Act, are otherwise qualified for participation in the [Defendant's] program and are being excluded from participation in, being denied the benefits of, [and] being subjected to discrimination under the program solely by reason of their respective disabilities, and that the relevant programs or activities are receiving federal financial assistance.

(Id. at ¶ 89). Plaintiffs also contend in count three that Defendant "repeatedly punished" J.L. and L.L. because of their respective disabilities. (Id. at 91). Plaintiffs request the entry of a declaratory judgment stating that Defendant's practices, policies, and procedures have subjected L.L. and J.L. to discrimination. In addition, Plaintiffs request an injunction against Defendant as well as compensatory damages, costs and attorney's fees. (Id. at ¶ 105).

In count four, Plaintiffs allege that Defendant violated the Americans with Disabilities Act (the ADA"), 42 U.S.C. § 12132, *et seq.*, by excluding L.L. and J.L. from educational programs on the basis of their disabilities. (Id. at ¶¶ 106-120). Plaintiffs request declaratory and injunctive relief as well as compensatory damages, attorney's fees, and costs. (Id. at ¶ 120).

In count five, Plaintiffs assert that Defendant, acting through its agents under color of law, violated the Fifth and Fourteenth Amendments to the United States Constitution. Thus, through the Civil Rights Act, 42 U.S.C. § 1983, Plaintiffs seek punitive damages, "civil rights remedies," injunctive relief, attorney's fees, and costs. (<u>Id.</u> at ¶ 140).

On September 11, 2009, Defendant filed a motion to dismiss and/or strike Plaintiff's Third Amended Complaint. (Doc. # 46).

### III. <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

-8-

> recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## V. **Analysis**

Defendant argues that Plaintiffs' complaint should be dismissed because Plaintiffs failed to exhaust administrative remedies as specified in the IDEA. In addition, Defendant asserts that Plaintiffs' claims under Section 1983 should be dismissed for failure to state a claim. In the alternative to dismissal of the complaint, Defendant seeks an order striking various requests for punitive damages and compensatory damages asserted in the complaint as well as striking Plaintiffs' request for a jury trial. Plaintiffs filed a response in opposition to the motion on October 7, 2008. (Doc. # 52). This Court will address these issues in turn.

### A. **IDEA Administrative Remedies**

The IDEA guarantees all children with disabilities have available to them a FAPE that emphasizes special education and related services designed to their unique needs. 20 U.S.C. §

1400(d)(1)(A); J.P. v. Cherokee County Bd. of Educ., 218 F. App'x 911, 913-914 (11th Cir. 2007); Sch. Bd. of Collier County v. K.C., 285 F.3d 977, 979 (11th Cir. 2002). Federal funds are made available to state and local educational entities which are required, through an evaluation process, to identify children with disabilities and to develop for each disabled child an annual individualized education program or IEP. 20 U.S.C. §§ 1411-1415. The IEP is formulated by the school during a meeting between the student's parents and school officials. Loren F. v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1312 (11th Cir. 2003) (citing 20 U.S.C. § 1414(d)(1)(A)-(B)). "A parent who wishes to challenge an IEP, or any matter relating to the provision of a FAPE, may request an 'impartial due process hearing' before an AJL." J.P., 218 F. App'x at 912.

If a FAPE is not provided by the public school, a parent may place their child in private school and seek reimbursement from the public school for the cost of private education. 20 U.S.C. § 1412(a)(10)(C)(ii).[3] A plaintiff may not sue for reimbursement until all administrative remedies have been

---

[3] The Eleventh Circuit has cautioned, however, "Even where a FAPE is not provided, courts can nevertheless deny reimbursement if a parent's own actions frustrated the school's efforts." Loren F., 394 F.3d at 1312.

exhausted. J.P., 218 F. App'x at 913-914. "[P]laintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities." N.B. by D.G. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378 (11th Cir. 1996).

The Eleventh Circuit explains, "because exhaustion is a prerequisite to the civil action contemplated by § 1415(l), a parent's failure to exhaust administrative remedies by requesting and participating in a due-process hearing will result in dismissal of the civil action." J.P., 218 F. App'x at 913. The Eleventh Circuit further explains that the exhaustion requirement applies not only to IDEA claims, but also to claims asserting the rights of disabled children under the ADA, Section 504 of the Rehabilitation Act, and the Constitution. Id.

Once all administrative remedies are exhausted, the plaintiff may appeal the final administrative decision, "within 30 days after the rendition of the order being appealed," in either state court or federal court. Hughes v. Dist. Sch. Bd. of Collier County, No. 2:06-cv-629-FtM-29DNF, 2007 WL 2729588, at *8 (M.D. Fla. Sept. 18, 2007).

In the present case, Defendant seeks dismissal of Plaintiffs' complaint on the basis that Plaintiffs failed to exhaust their administrative remedies under the IDEA. Defendant does not contend that Plaintiffs completely failed to avail themselves of the administrative remedies available under the IDEA. Rather, Defendant contends that, because the ALJ dismissed L.L. and J.L.'s petitions as moot, there is no administrative record available for this Court's review. Defendant surmises, "the absence of such a record makes this Court's review impossible." (Doc. # 46 at 5).

Defendant argues: "IDEA cases are something of appeal-like hybrids in which the District Court must make its determination largely on the basis of the record from the administrative tribunal." (Id.) In support of this proposition, Defendant cites Walker County Sch. Dist. v. Bennett, 203 F.3d 1293 (11th Cir. 2000), in which the court held, "A trial court must make an independent ruling based on the preponderance of the evidence, but the [IDEA] contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial." Id. at 1298.

The factual circumstances of Walker, however, are inapposite to the present case. In Walker, the plaintiff

school district challenged the ALJ's determination that the school district was required to pay for a disabled child's private school education because the school district failed to provide the disabled student with a FAPE. Id. at 1295. In Walker, the court did not discuss the requirement of exhaustion of administrative remedies. There, it was not disputed that the plaintiff participated in an administrative hearing before filing a complaint in federal court. Id. Rather, the parties disputed the manner in which the district court weighed and received into evidence the testimony and documents presented at the administrative level. Id.

Among other things, the Walker court determined, "the administrative decision in an IDEA case is entitled to due weight and the court must be careful not to substitute its judgment for that of the state educational authorities. . . . [T]he extent of the deference to be given to the administrative decision is left to the sound discretion of the district court which must consider the administrative findings but is free to accept or reject them." Id. at 1297.

Upon due consideration, and in light of the stage of the proceedings, this Court rejects Defendant's argument that the ALJ's mootness determination extinguishes this Court's jurisdiction. Here, Plaintiffs alleged in their voluminous

-13-

and detailed complaint that they participated in the administrative process outlined in the IDEA, and that the ALJ ultimately determined that the issues were moot. Plaintiffs contend that the ALJ's mootness findings regarding J.L. and L.L. were erroneous. This Court is free to agree with the ALJ or, upon consideration of "additional evidence," is free to overturn the ALJ's decision and "grant such relief as the court determines is appropriate." Id. at 1294 (citing 20 U.S.C. § 1415(I)(2)). This Court agrees with Plaintiffs that they "should not be punished because the DOAH tribunal erroneously failed to create a record on their I.D.E.A. claims. Were the Court to grant . . . dismissal of the I.D.E.A. claims . . . the doctrine of issue preclusion would wholly prevent the Lewellyns from ever seeking any relief." (Doc. # 52 at 8).

Thus, the Court declines to dismiss Plaintiffs' complaint on the basis of alleged failure by Plaintiffs to exhaust available administrative remedies.

### B. Section 1983

Defendant also argues that Plaintiffs' Section 1983 claim should be dismissed because a Section 1983 claim cannot be based on a violation of the IDEA, the ADA, or Section 504 of the Rehabilitation Act. Plaintiffs appear to agree that a

Section 1983 claim cannot be based on the aforementioned federal statutes. Plaintiffs correctly point out that their complaint alleges violations of the Fifth and Fourteenth Amendments to the United States Constitution. Section 1983 creates a federal remedy for deprivations of federal rights. <u>Wideman v. Shallowford Cty. Hosp.</u>, 826 F.2d 1030, 1032 (11th Cir. 1987). An actionable Section 1983 claim requires proof of a deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States and that the deprivation was by a person acting under color of law. <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir. 1998) (internal citations omitted).

Plaintiffs allege that Defendant, acting through its agents under color of law, intentionally deprived Plaintiffs of their rights under the Fifth and Fourteenth Amendments to the United States Constitution. Thus, at this stage of the proceedings, and on the basis of Defendant's one-paragraph argument regarding Section 1983, this Court is not inclined to dismiss Plaintiffs' Section 1983 claims.

**C. Punitive Damages**

Defendant also seeks an order striking from the complaint Plaintiffs' request for punitive damages as to Plaintiffs' Section 1983 claim. Defendant devotes only two sentences of

the motion to dismiss to this argument. Defendant simply asserts that it is immune from the imposition of punitive damages by this Court for the allegations asserted in the complaint.

Plaintiffs, on the other hand, contend that punitive damages are available "for the actions of a government official where that official's qualified immunity is pierced." (Doc. # 52 at 11). The operative complaint is lodged against the Sarasota County School Board, not against the eleven individual employees of the School District who are identified in the operative complaint.[4] Nevertheless, this Court declines to strike the request for punitive damages at this early stage of the proceedings.

The parties have not briefed this court on qualified immunity issues or other matters that will implicate the issue of whether punitive damages are an appropriate remedy in this case.[5] The Court will reconsider the issue of punitive

---

[4] Claims against school officials and board members in their official capacities are claims against the School District. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).

[5] Plaintiffs do not seek punitive damages for violations of the ADA, IDEA, and Rehabilitation Act.

damages, if properly briefed, in motions for summary judgment or other appropriate submissions.

**D. Compensatory Damages**

Defendant asserts that Plaintiffs are not entitled to compensatory damages under the ADA and Section 504 of the Rehabilitation Act. In addition, Defendant argues that Plaintiffs are not entitled to "tort-like" damages under the IDEA. Thus, Defendant requests that this Court strike these requests from Plaintiffs' complaint.

Citing binding Eleventh Circuit case law, Plaintiffs retort that compensatory damages are permitted in cases such as the present one. See Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007) ("non-economic compensatory damages are indeed available for intentional violations of the [Rehabilitation Act].").

In determining that a blind plaintiff was entitled to damages for emotional distress when the defendant violated the ADA and Rehabilitation Act, the court explained that "a frequent consequence of discrimination is that the victim will suffer emotional distress." Sheely, 505 F.3d at 1198-1199. The Eleventh Circuit further held, "[W]e are bound by Bell v. Hood's presumption that 'federal courts may use any available remedy to make good the wrong done.'" Sheely, 505 F.3d at

1198-1199 (citing <u>Bell v Hood</u>, 327 U.S. 678, 684 (1946)). Thus, this Court has no basis to strike Plaintiffs' request for compensatory damages with respect to Plaintiffs' Rehabilitation Act and ADA claims.

Furthermore, while this Court agrees with Defendant that "tort-like" damages are not available for violations of the IDEA,[6] a close reading of Plaintiffs' complaint reveals that Plaintiffs are not seeking tort-like damages (i.e. emotional distress) for Defendant's alleged violations of the IDEA. Rather, Plaintiffs seek re-evaluation of J.L. and L.L., related educational expenses, and other remedies discussed in the IDEA. It appears that Plaintiffs are generally seeking appropriate relief under governing federal law. However, because Plaintiffs reference damages in their wherefore clause with respect to the IDEA, it may be necessary to further scrutinize the remedies that Plaintiffs seek in this case. This Court will undertake further analysis of this issue, if necessary, at a later date.

---

[6] In <u>Ortega v. Bibb County Sch. Dist.</u>, 397 F.3d 1321, 1325 (11th Cir. 2005), the court explained, "[T]he IDEA's primary purpose is to ensure a free appropriate public education, not to serve as a tort-like mechanism for compensating personal injury. . . . [M]onetary damages are not relief that is available under the IDEA." <u>Id.</u> (internal citations omitted).

**E. Jury Trial**

Defendant seeks an order striking Plaintiffs' request for a jury trial in this case. Defendant correctly asserts that Plaintiffs are not entitled to a jury trial on their IDEA claims. See Loren F., 349 F.3d at 1313 ("no IDEA jury trial right exists.") However, Defendant cannot deny that Plaintiffs are entitled to a jury trial on their remaining claims, which are asserted under the ADA, Rehabilitation Act, and Section 1983. This Court will not strike Plaintiffs' request for a jury trial because Plaintiffs are entitled to a jury trial on three of Plaintiffs' five complaint counts. Thus, it is appropriate to deny Defendant's motion to dismiss.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Sarasota County School Board's Motion to Dismiss and/or Strike Plaintiffs' Third Amended Complaint (Doc. # 46) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 1st day of June, 2009.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record